# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:16-bk-03837 |
| SWORDS GROUP, LLC, | ) | Chapter 11 |
| | ) | Judge Marian F. Harrison |
| Debtor. | ) | |

---

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: JUNE 29, 2017.**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: AUGUST 1, 2017,**
**AT 9:00 A.M., COURTROOM 3, 701 BROADWAY, NASHVILLE, TENNESSEE 37203**

---

### NOTICE OF MOTION FOR ORDER APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Swords Group, LLC ("**Debtor**") has asked the Court to enter an order authorizing Debtor to sell certain real property located at 704 Briskin Lane, Lebanon, Tennessee 37087 free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the Court to grant the attached motion, or if you want the Court to consider your views on the motion, then on or before the date set forth above, you or your attorney must:

1. File with the Court your response or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**

   If you need assistance with Electronic Filing, you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy Court in person at: US Bankruptcy Court, 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2. **Your response must state that the application to which you are responding is Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363.**

3. You must serve your response or objection **by electronic service through the Electronic Filing system** described above.

If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. ***THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE***. You may check whether a timely response has been filed by calling the Clerk's office at (615) 736-5584 or viewing the case on the Court's website at <www.tnmb.uscourts.gov>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the application and may enter an order granting that relief.

DATED:  June 8, 2017                     Respectfully submitted,

                                         /s/ R. Alex Payne
                                         Griffin S. Dunham
                                         R. Alex Payne
                                         DUNHAM HILDEBRAND, PLLC
                                         2510 8th Avenue South, Suite 210
                                         Nashville, Tennessee 37204
                                         629.777.6529
                                         alex@dhnashville.com
                                         *Counsel for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:16-bk-03837 |
| SWORDS GROUP, LLC, | ) | Chapter 11 |
| | ) | Judge Marian F. Harrison |
| Debtor. | ) | |

## MOTION FOR ORDER APPROVING SALE FREE AND CLEAR OF
## LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Swords Group, LLC (the "**Debtor**") hereby applies to this Court pursuant to 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure, for entry of an order authorizing and approving the Debtor's sale of real property located at 704 Briskin Lane, Lebanon, Tennessee 37087 (the "**Property**") to Realwarden, LLC or any assignee thereof ("**Buyer**") free and clear of all liens, claims, and encumbrances, for a price not less than two million, one hundred thousand dollars ($2,100,000).

1.      By this Motion, the Debtor seeks entry of an order approving the sale of the Property on the terms set forth herein and granting other relief, including a finding that the sale is in good faith as contemplated by Section 363(m) of the Bankruptcy Code and approval for Debtor to make certain distributions with funds from closing.

2.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3.      The Court possesses the requisite authority to grant the relief requested herein pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**"), in particular, Section 363 and Rules 6004 of the Federal Rules of Bankruptcy Procedure.

4.    On May 26, 2016, (the "**Petition Date**"), Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.    Debtor is in possession of its property and is managing its affairs as Debtor-in-Possession.  No Trustee or committee of unsecured creditors has been appointed.

6.    Since before the Petition Date, Debtor has marketed its properties, including the Property to be sold under the Motion.

7.    Debtor has filed a Chapter 11 plan (the "**Plan**") that proposes to satisfy Debtor's primary non-insider debt – secured debt owed to Simmons Bank and property tax debt owed on Debtor's real estate – through the sale of real property owned by Debtor. While awaiting a final hearing on Debtor's Plan, Debtor has located and secured a buyer on one of Debtor's properties.

8.    On June 6, 2017, Debtor and Buyer signed the Agreement to sell the Property, the closing of which is expressly subject to approval by this Court.

9.    Debtor is the owner of the Property, described as 704 Briskin Lane, Lebanon, Tennessee 37087. The Property is subject to a recorded security interest in favor of Simmons Bank, and Debtor owes back taxes on the property to the Wilson County, Tennessee Tax Assessor for 2014 through year-to-date 2017.

10.    Simmons Bank filed a proof of claim in this case (Claim No. 2) in the amount of $3,438,992.00. The Simmons Bank claim is also secured by other properties owned by Debtor, which Debtor is also marketing during this Chapter 11 proceeding.

11.    Wilson County filed a proof of claim in this case (Claim No. 4), reflecting that Debtor owed approximately $38,092.28 in taxes with respect to the Property.

2

**ARGUMENT**

12.      The Debtor has determined in its business judgment that a sale of the Property as set forth herein is in the best interest of creditors and the estate.  The offer is the highest and best offer for the Property presented to the Debtor.

13.      The Debtor desires to sell the Property under terms and conditions substantially similar to the Contract for Purchase of Real Property and all amendments thereto (the "**Agreement**") attached hereto as **Exhibit 1**.  The terms of the Agreement are summarized as follows:

| | |
|---|---|
| **Purchase Price:** | $2,100,000 |
| **Earnest Money:** | $25,000 |
| **Closing Date:** | Within 24 days of closing of the Inspection Period |
| **Inspection Period:** | 30 days from contract execution |
| **Brokers' Commission:** | 5%, upon Court approval |

14.      The Buyer understands that the Court must approve the sale as a condition to closing.  The parties are ready to commence the inspection period upon filing of this motion.

15.      Assuming total commissions of 5% split between Joe McKnight with Chas. Hawkins Co., Inc. ("**Broker**"), the listing agent whose employment has been approved by this Court (Doc. No. 101) and Bo Fulk and Jim Rodrigues of JLL, Buyer's real estate brokers, the estate will net an estimated recovery of approximately $1,995,000, which amounts will enable Debtor to satisfy outstanding property tax debt on the Property and pay down a significant amount of the secured debt owed to Simmons Bank.

16.      Debtor will satisfy the entire tax liability on the Property at closing, leaving approximately $1,957,000 in remaining sale proceeds, which amounts will be transferred to or paid directly to Simmons Bank, thereby reducing the Bank's secured claim. Simmons Bank

would retain its liens on the other three properties still owned by Debtor's estate, as well as a lien on the sale proceeds prior to payment to Simmons Bank.

17.     The Bankruptcy Code authorizes a debtor in possession "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

18.     Section 363(f) of the Bankruptcy Code provides that a debtor-in-possession may sell property free and clear of any interest in such property under the following circumstances:

>     (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
>     (2)     such entity consents;
>
>     (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
>     (4)     such interest is in bona fide dispute; or
>
>     (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

19.     Debtor is in need of selling one or more of its properties in the next few months. Debtor's most viable financial path forward is selling its properties to pay down its secured debt and pay off Debtor's tax claims, and to thereby reduce the amount of any remaining ongoing payment obligations to Simmons Bank. After the next three months, Debtor's ability to generate sufficient rents to pay its current obligations is uncertain, at best.

20.     The Property has been on the market for over a year. Debtor received periodic interest and numerous visits to the Property, but only a few offers.

21.     On November 29, 2016, Debtor entered into a contract to sell the Property to C&T Land Company for the price of $2 million (Doc. No. 94). Debtor filed a motion to approve

the terms of the sale, which motion was approved by order of the Court dated January 10, 2017 (Doc. No. 108).

22.    Subsequent to this Court's approval, the environmental inspection performed by C&T Land Company revealed some issues with the Property, including the presence of sink holes. C&T Land Company offered to reduce its purchase price to $1.6 million, which Debtor rejected. C&T Land Company then exercised its rights to terminate the contract.

23.    It is Debtor's understanding that the Property has an appraised fair market value of approximately $2.2 million, but that such value does not take into account the recently discovered geological issues.

24.    Debtor placed the Property back on the market, and conducted multiple showings with interested parties. Debtor and its real estate agent, Joe McKnight, disclosed the sink hole issues to interested prospective buyers.

25.    On March 17, 2017, Debtor filed a second motion to sell the Property, this time to Crossland Transit Group, Inc. for $2.1 million (Doc. No. 139). That motion was granted by the Court on April 11, 2017 (Doc. No. 149). However, due to that buyer being unable to locate a suitable tenant sufficient to secure financing, the second sale of Briskin Lane did not close.

26.    Debtor and the previous buyer, Crossland, agreed to an extension of the inspection period. During this extension, Debtor was granted the right to market the property, conditioned on Crossland and its assignees obtaining a right of first refusal.

27.    Debtor's real estate agent continued to market the Property and located Buyer, who agreed to match the monetary terms of the previous offer approved by this Court and to close on an expedited timeline.

5

28.     The previously approved buyer, an assignee of Crossland, declined to exercise its right to close and terminated the contract. Debtor is now under contract to sell the Property to Buyer.

29.     Buyer's offer for the Property matches the best offer that Debtor has received for the Property in the past year and is anticipated to close quickly for the benefit of Debtor's estate and creditors. Debtor and its professionals believe that the Buyer's offer is among the best offer that Debtor could reasonably expect for the Property.

30.     Debtor understands that Simmons Bank, the Debtor's secured creditor with a lien interest in the Property, is agreeable to the terms and conditions of the sale of the Property, as disclosed in the Motion.

31.     Debtor has discussed this sale with Simmons Bank, and believes that Simmons Bank will consent to the sale of the Property on the conditions proposed herein, such that the sale satisfies 11 U.S.C. §363(f)(2), provided that the lien of Simmons Bank shall attach to the proceeds of the sale.

32.     Further, Debtor believes that the relief requested herein meets the requirements of Section 363(f) of the Bankruptcy Code.  The Debtor is permitted to sell property free and clear of the liens, claims, and encumbrances of any holder of a secured claim because the entities asserting liens on the Property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interest.  Although the price at which the Property is less than the value of Simmons Bank's total lien, Debtor asserts that Simmons Bank will retain a security interest in the proceeds of the sale, as well as a security interest in other properties that exceeds the remaining amount of Simmons Bank's secured claim.

6

33.     Debtor submits that because Simmons Bank is retaining its lien and stands to receive deferred cash payments totaling at least the allowed amount of its claim under Debtor's pending Plan of Reorganization, Simmons Bank could be compelled to accept a monetary satisfaction of its interest in the Property pursuant to 11 U.S.C. §1129(b)(2)(A).

34.     Debtor further seeks the protections afforded to a purchaser with regard to sale transactions under 11 U.S.C. §363(m), which provides that the reversal or modification on appeal of the Court's authorization of a sale or lease of property does not affect the validity of the sale or lease if the entity that purchased or leased the property did so in good faith.

35.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors.  *In re Abbotts Dairies,* 788 F.2d 143, 147 (3rd Cir. 1986).

36.     Debtor submits that the proposed method of conducting the sale is reasonable, appropriate, and designed to ensure fairness.  Unless specifically disputed, the Debtor requests that the sale should be entitled to the protections of Section 363(m) of the Bankruptcy Code.  If the good faith of the Debtor or the Buyer is disputed, the Debtor requests that such dispute be determined at the hearing on this Motion.

37.     The Buyer is not an insider of Debtor and no proceeds of the sale will be paid to Debtor or any insiders.

38.     Debtor believes that the sale is for fair market value. Debtor is not aware of any actual or potential higher or better offers.

7

39. The sale of the Property, pursuant to the Motion, is in the best interests of Debtor, Debtor's creditors, and all parties in interest. It is the result of a concentrated marketing effort and is the sale on the best terms and conditions available to Debtor.

40. Debtor will also provide to any requesting party a copy of the proposed closing documents to be prepared and executed by the parties. Debtor will also promptly file a report of sale following the sale of the Property.

41. The Debtor further requests the authority to use the proceeds from the sale of the Property to pay at closing (i) the lien of the Lender; (ii) any other claims that constitute liens on the Property, to include the tax claims of Wilson County, Tennessee; and (iii) allowed commissions to Chas. Hawkins Co., Inc. and Bo Fulk and Jim Rodrigues of JLL, as brokers.

**WHEREFORE**, Debtor respectfully requests the entry of an order (i) authorizing the sale of the Property free and clear of all liens, claims interests and encumbrances in accordance with the procedures set forth herein; (ii) finding that the Debtor and buyer have proceeded in good faith; (iii) authorizing payments to Simmons Bank, Wilson County, Tennessee, Chas. Hawkins Co., Inc. and JLL as broker for Buyer; and (iv) for such other and further relief as is appropriate and just.

Respectfully submitted,

/s/ R. Alex Payne
Griffin S. Dunham
R. Alex Payne
DUNHAM HILDEBRAND, PLLC
2510 8th Avenue South, Suite 210
Nashville, Tennessee 37204
629.777.6529
alex@dhnashville.com
*Counsel for the Debtor*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically on June 8, 2017 and that service was made to (i) all parties consenting to electronic service via the CM/ECF system; (ii) the Office of the United States Trustee via e-mail; and (iii) all of Debtor's creditors via e-mail, fax, or U.S. mail.

/s/ R. Alex Payne
R. Alex Payne

**EXHIBIT 1**

## CONTRACT FOR PURCHASE OF REAL PROPERTY

This Contract for Purchase of Real Property (the "Agreement") is entered into as of the 6 th day of June, 2017 (the "Effective Date") by and between SWORDS GROUP, LLC, "Seller") whose address is 492 Industrial Drive, Mount Juliet, Tennessee 37122, Email: swordjm@bellsouth.net, and REALWARDEN, LLC, or it's assignees, a Texas limited liability company ("Buyer") whose address is 1432 Tyne Blvd, Nashville, TN 37215, Phone 615-418-7174, Email: hentrekin@wardencapital.com. Collectively, Buyer and Seller shall be called the "Parties."

In consideration of the mutual covenants and conditions contained herein, and other good and valuable considerations exchanged between the Parties, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree as follows:

1.      The Property. Subject to the conditions contained herein, Seller hereby agrees to sell and Buyer agrees to purchase certain real property together with all improvements and fixtures located at 704 Briskin Lane, Lebanon, TN 37087 consisting of approximately 50,000 square feet of warehouse on 17.75 acres and being identified as tax Map 082 Parcel 003.01 on the city of Lebanon tax maps (the "Property"). The Property is described in more detail in **Exhibit A**.

2.      Purchase Price. The purchase price for the Property shall be two million, one hundred thousand Dollars ($2,100,000.00). The purchase price shall be payable in cash at Closing (as defined below). Buyer shall deposit $25,000 in earnest money (the "Earnest Money Deposit") with Midtown Title, LLC located at 1704 Charlotte Avenue, Suite 105 Nashville, Tennessee 37203 ("Escrow Agent" or "Title Company") (attention: Chris Corriveau,), within 3 business days of the execution and delivery of this Agreement by both Buyer and Seller, to be held in escrow pursuant to the terms of this Agreement. The Earnest Money Deposit, and any additional deposits made pursuant to this Agreement and any interest thereon shall be applied against the purchase price.

3.      Initial Inspection Period. Buyer's obligations hereunder are conditioned on Buyer's determination in its sole discretion that the following conditions are satisfied:

(i)     Buyer's determination that Seller owns good and marketable fee simple title to the Property subject only to existing easements and restrictions none of which would unreasonably impair Buyer's development of the Property;

(ii)    Buyer's determination that the Property is free of any type of hazardous waste contamination or threat of contamination and Buyer's determination that the Property is otherwise suitable for development. Buyer may obtain a satisfactory Phase One Environmental Survey of the Property (and Phase II if necessary) in order to satisfy this condition or may undertake such other due diligence as Buyer deems appropriate to satisfy this condition.

(iii)     Buyer's determination based on engineering, topography, soils analysis, utility availability, market analysis, input from planning staff of the applicable governmental entities and other due diligence to be conducted by Buyer, that acquisition or development of the Property is economically feasible.

Buyer shall have thirty (30) days following the Effective Date (the "Initial Inspection Period") to satisfy conditions (i), (ii), and (iii) above. Buyer may waive the remainder of the Initial Inspection Period before its conclusion should the Buyer be satisfied with conditions (i), (ii), & (iii), by notifying Seller in writing. If such waiver occurs, the Closing Period, if applicable, shall begin the day following receipt by Seller of such waiver notice. Seller shall not be required to vacate the Property until expiration of the full thirty (30) day Initial Inspection Period and the twenty-four (24) day Move Out Period, regardless of Buyer's decision to exercise such a waiver of the remaining Inspection Period and the setting of a Closing Date.

During the Initial Inspection Period and any extensions thereof, Buyer shall have the right to enter the Property to inspect, examine, or otherwise do whatever Buyer deems necessary by way of engineering and planning for the proposed development of the Property. This privilege shall include the right to perform engineering studies, soil tests, borings and other tests required to obtain any information necessary to assess the feasibility of Buyer's proposed development of the Property and to determine surface and subsurface conditions. All such tests and studies: (i) shall be performed at the sole expense of the Buyer; (ii) shall not unreasonably disturb Seller's or its tenants' occupancy or use of the Property; and (iii) shall be performed upon reasonable notice and during normal business hours. In the event Buyer does not consummate the purchase of the Property, Buyer shall substantially restore the Property to its original condition prior to commencement of such tests or engineering. Buyer shall promptly pay for all work performed by order of Buyer, its agents, representatives or contractors with respect to the Property and shall not cause the creation of any lien upon the Property. In addition, Buyer agrees to hold harmless and indemnify Seller as to any loss, cost or expense, including reasonable attorney's fees, incurred by Seller as a result of Buyer's (or its agents) inspection activities on the Property. Buyer shall also have the right to seek zoning changes and/or approvals for commercial purposes and Seller agrees to cooperate with Buyer on any such zoning changes or approvals. If Buyer fails to consummate the purchase of the Property, Buyer shall provide Seller with copies of all engineering studies and plans generated concerning the Property.

Within 3 days of contract execution Seller shall furnish Buyer with whatever due diligence documents relating to the Property in Seller's possession that Buyer reasonably requests, including but not limited to current leases, rent roll, contracts or agreements encumbering the Property, existing environmental, boundary survey, engineering, or building condition reports, floor plans, CAD drawings and as built specifications, easements, CC&Rs, or any other documents governing interaction with the adjacent properties and the roadway. To the extent Seller does not deliver such documents in its

2

possession within 3 days, the beginning of the Initial Inspection period shall be delayed until Seller delivers said documents to Buyer.

The initial $25,000 Earnest Money Deposit shall be refundable in the event Buyer, in its sole and absolute discretion, cancels this Agreement during the Initial Inspection Period. Buyer may cancel this Agreement by written notice to Seller given on or before the end of the Initial Inspection Period in which case Buyer shall receive a full refund of the $25,000 Earnest Money Deposit, except for $100 which shall be paid to Seller as independent consideration hereunder in all events. If the cancellation is a result of Seller's default, Buyer shall receive the Earnest Money Deposit and may pursue any and all remedies available to it at law or equity. If Buyer fails to consummate the purchase of the Property, the Escrow Agent shall promptly pay the Earnest Money Deposit to Seller. Retention of the Earnest Money Deposit is Seller's sole remedy hereunder in the event of Buyer's failure to close on the purchase of the Property.

3.1.    <u>Move Out Period.</u> Immediately following the Initial Inspection Period and upon setting the Closing Date, Seller shall have up to twenty-four (24) days to remove all equipment from the Property (the "Removal Period"). To the extent Closing occurs prior to expiration of the Removal Period, Seller shall be entitled to the remainder of the Removal Period rent free.

4.    <u>Condition of Title</u>. Buyer's obligation to purchase the Property is conditioned upon Seller's ability to convey good and marketable fee simple title to the Property to Buyer subject only to existing easements and restrictions of record which do not unreasonably interfere with Buyer's development of the Property. Seller shall bear the cost of providing an owner's title insurance policy covering the Property purchased hereunder which policy or policies shall insure good and marketable fee simple title to the Property in Buyer subject only to the standard printed exceptions which Buyer agrees to (the Permitted Exceptions). Seller agrees to execute and provide such instruments, affidavits, and reports as may be required in order to enable the title insurance company to issue such policies.

Conveyance of the Property shall be by Limited Warranty Deed subject only to those matters permitted to be shown on the title insurance policy and current year's taxes which shall be prorated and assumed by Buyer. Within twenty (20) days of the Effective Date of this Agreement, Buyer shall obtain a title insurance commitment from an insurer of Buyer's choice showing the current status of the title to the Property and any encumbrances thereon and including copies of all instruments referred to in the commitment. If the title commitment reflects any matters unsatisfactory to the Buyer, Buyer shall send written notice to Seller identifying such objectionable matters. Seller agrees to use good faith efforts to cure any title defects. Any matter which may be cured by payment of a sum certain may be cured at Closing by payment of such amount from Seller's proceeds. If Seller is unable to cure any title defect or objectionable matter before the end of the Initial Inspection Period, then Buyer may extend the time for Closing for

3

such additional time as Seller and Buyer may agree in writing. If the title defect or objectionable matter has not been cured within such additional time or is not capable of being cured in Buyer's reasonable opinion within such time, Buyer shall have the right to terminate this Agreement and receive a refund of all the Earnest Money Deposit previously paid.

5.     Closing of Sale. Closing on the sale of the Property ("Closing") shall occur within twenty-four (24) days following the end of the Initial Inspection Period. At Closing, Seller shall pay all delinquent taxes, its pro rata portion of current year's taxes, real estate commission per Section 6, cost of the title search/examination and owner's title insurance policy, Seller's legal fees and other costs as described in more detail in Section 5.1. At Closing, Buyer shall pay its pro rata portion of current year's taxes, all costs of recording and transfer taxes on the deed, Buyer's legal fees, appraisal fees, the cost of boundary survey and other costs as described in more detail in Section 5.1. Other costs and expenses of Closing shall be paid by the Parties in accordance with the real estate customs in the Nashville, Tennessee area. Any real estate broker commission due at the Closing will be paid in accordance with Section 6 below.

At Closing, Buyer shall deliver to Escrow Agent for delivery to Seller:

(i)     Cash, wired funds or a certified or cashier's check payable to the order of the Escrow Agent, which shall serve as the Closing Agent unless otherwise agreed to in writing by the Parties, representing the cash portion of the Purchase Price due in accordance with this Agreement and subject to other credits, debits and prorations as may be contemplated by this Agreement or the Parties' final Closing/Settlement Statements.

At Closing, Seller shall deliver to Escrow Agent for delivery to Buyer:

(i)     The deed duly executed and acknowledged by Seller,

(ii)    Any and all transfer declarations or disclosure documents, duly executed by the appropriate Parties, required in connection with the deed by any state, county or municipal agency having jurisdiction over the Property or the transactions contemplated hereby, and

(iii)   Such other documents as are reasonably required by Buyer and the Escrow Agent to carry out the terms and provisions of this Agreement.

5.1    Proration.     At Closing, current year real estate taxes payable for the year in which Closing occurs, utility bills for water, electricity, sewer, drainage, gas, telephone, association fees and other utility charges, if applicable, other operating expenses payable by Seller as to the Property as approved by Buyer in writing at or before Closing, and, as Buyer may approve during its Inspection Period in each instance, payments and receipts under any restriction and easement agreements, documents or instruments comprising portions of the printed exceptions to title (collectively "the Closing Proration Items"), shall

4

be prorated as of 11:59 pm on the day immediately preceding the Closing Date ("the Closing Time").

Seller will be charged and credited for the amounts of all of the Closing Proration Items relating to the periods up to and including the Closing Time and Buyer will be charged and credited for all of the Closing Proration Items relating to the periods after the Closing Time. Such preliminary estimated Closing Time prorations shall be set forth on a preliminary Closing statement to be prepared by the Closing Agent and submitted to the Parties for review and approval not less than five (5) days prior to the Closing Date (the "Closing Statement"). The Closing Statement, once agreed upon, shall be signed by Buyer and Seller and delivered to the Escrow Agent for purposes of making the preliminary proration adjustment at Closing subject to the final cash settlement provided for below. The preliminary proration shall be paid at Closing by Seller to Buyer (if the preliminary prorations result in a net credit to Buyer) or by Buyer to Seller (if the preliminary prorations result in a net credit to Seller) by increasing or reducing the cash to be delivered by Buyer in payment of the Purchase Price at the Closing. If the actual amounts of the Closing Time Proration Items are not known as of the Closing Time, the prorations will be made at Closing on the basis of the best evidence then available; thereafter, when actual figures are received, re-prorations will be made on the basis of the actual figures, and a final cash settlement will be made between Seller and Buyer.

5.2.    Conditions at Closing. The Property shall be delivered to Buyer completely unoccupied and unencumbered of leases or other agreements at the Closing Date. Buyer shall not assume any agreements or contracts, including but not limited to management, listing, leasing, maintenance, janitorial, service or landscaping agreements or contracts relating to the Property or any fixtures therein unless explicitly consented to in writing by Buyer. Seller shall return property to condition as described in **Exhibit B**. Except as described in Exhibit B, Buyer is acquiring the Property "AS IS" and in its current condition.

5.3    Bankruptcy Court Approval. Closing of this sale is subject to the approval of the United States Bankruptcy Court for the Middle District of Tennessee, which Seller shall promptly seek within five (5) business days of both Parties' execution of this Agreement. Seller shall endeavor to obtain Court approval prior to setting a Closing date. Notwithstanding the foregoing, an Order by the Bankruptcy Court denying Seller's Motion to Sell the Property shall not constitute an event of default. In the event the sale is not approved, Seller shall provide Buyer with written notice that this Contract is null and void, return Buyer's earnest money deposit, and neither Party shall have any further liability to the other.

6.    Real Estate Commission. The Parties agree that no real estate agents were involved in this transaction other than Joe McKnight, of Chas Hawkins Co., and Bo Fulk and Jim Rodrigues, both of JLL (the "Brokers"). Except for the 5% commission payable to the Brokers, Seller hereby indemnifies and agrees to hold the Buyer harmless from and against any and all loss, costs, or expense, (including attorney's fees and expenses)

5

resulting from any claim for any fee, commission or similar claim by any broker, agent, finder or salesman claiming by, through or under Seller related to the origination, negotiation, or consummation of the transactions contemplated hereby. Except for any commission payable to the above, Buyer hereby indemnifies and agrees to hold the Seller harmless from and against any and all loss, costs, or expense, (including attorney's fees and expenses) resulting from any claim for any fee, commission or similar claim by any broker, agent, finder or salesman claiming by, through or under Buyer related to the origination, negotiation, or consummation of the transactions contemplated hereby. Buyer and Seller hereby agree that Seller shall pay the 5% commissions due to and to be split between Joe McKnight at Chas Hawkins Co and Bo Fulk/Jim Rodrigues of JLL.

       7.    <u>Representations and Warranties</u>. The Seller hereby represents and warrants to and for the benefit of Buyer, as of the date of Closing hereunder as follows:

       (a)    To the knowledge and belief of Seller, no portion of the Property is affected by any general, special, or other assessments constituting or which could mature into a lien on the Property, excluding current year ad valorem property taxes, and the Seller has not received notice of any general, special, or other assessment affecting the Property;

       (b)    To the knowledge and belief of Seller, no action, suit or proceeding is pending or threatened against or affecting the Property or any portion thereof relating to the Property or questioning the compliance of the Property with any applicable rules, ordinances, laws and regulations, other than past due tax assessments to be satisfied at Closing;

       (c)    Other than the voluntary petition in Chapter 11 bankruptcy filed by Seller in the United States Bankruptcy Court for the Middle District of Tennessee, Case No. 3:16-bk-03837, there are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debtor relief laws contemplated or filed by the Seller or pending against the Seller or the Property.

       (d)    No assessments for public improvements have been made against the Property that remain unpaid.

       (e)    To the best of Seller's knowledge, information and belief, the Property has not been contaminated by hazardous waste substances so as to give rise to a potential liability on the part of the owner under applicable law for the removal and cleanup of any such substances.

       (f)    To the best of Seller's knowledge, information and belief, the Property does not contain unsuitable fill material and the building and parking lot do not have any soil conditions or unusual features, such as sink holes or unstable ground which

6

would make the Property unsuitable for construction. Buyer acknowledges there are several sink holes in the rear of the Property, away from the building.

(g)     There are no unpaid bills, outstanding work contracts or expenses associated with the Property, other than outstanding tax assessments and the lien of Simmons Bank to be satisfied at Closing.

(h)     Seller is a limited liability company formed under the laws of the State of Tennessee, has duly and validly authorized and executed this Agreement, has full right, title, power and authority to enter into this Agreement and to consummate the transactions provided for herein, and the joinder of no person or entity will be necessary to convey the Property fully and completely to Buyer at Closing. Without limiting the foregoing, the execution by the undersigned, the President and owner of Seller with all right and authority to execute this Agreement for Seller so as to make the same fully enforceable against Seller and all of its partners, and the consummation by Seller of the transactions contemplated hereby do not, and at the Closing will not, result in a breach of any of the terms or provisions of, or constitute a default or a condition which upon notice or lapse of time or both would ripen into a default under any indenture, agreement, instrument or obligation to which Seller is a Party or by which the Property or any portion thereof is bound; and does not, and at the Closing will not, constitute a violation of any Laws, order, rule or regulation applicable to Seller or any portion of the Property of any court or of any federal, state or municipal regulatory body or administrative agency or other governmental body having jurisdiction over Seller or any portion of the Property.

(i)     Seller has and at the Closing will have, and will convey, transfer and assign to Buyer, good, marketable and insurable fee simple title to the Real Property, free and clear of any deeds of trust, mortgages, liens, encumbrances, tenancies, licenses, chattel mortgages, conditional sales agreements, leasing commissions agreements, security interests, covenants, conditions, restrictions, judgments, rights-of-way, easements, encroachments, claims and any other matters affecting title or use of the Property, except the Permitted Exception.

(j)     The Property will be conveyed free and clear of any leases.

8.     <u>Miscellaneous</u>.

(a)     This Agreement shall be binding on and inure to the benefit of the Parties hereto and their respective successors and assigns. Buyer may assign the contract at any time to another Party or entity of their choosing.

(b)     Paragraph headings are for convenience only and in no way shall affect the meaning or interpretation of this Agreement.

7

(c)     Buyer and Seller agree that time is of the essence for the performance of each and every covenant and the satisfaction of each and every condition contained in this Agreement.

(d)     All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally, sent electronically (via email or other methods), or mailed by registered or certified mail (return receipt requested) to the Parties at the addresses specified for the Parties in Paragraph 1 of this Agreement or, in the case of the Escrow Agent, at the address or email below its signature below (or at such other address for a Party as shall be specified by like notice). A copy of any notices sent to Seller hereunder shall also be sent to: (i) R. Alex Payne, phone number: 629.777.6529, email: alex@dhnashville.com, address 2510 8th Avenue South, Suite 210, Nashville, Tennessee 37204, (ii) Joe McKnight, phone number: 615.345.7251, email: jmcknight@chco.com, address: 760 Melrose Avenue, Nashville, Tennessee 37211. Any Party's address may be changed at any time by notice given as provided above; provided, however, that any such notice or change of address shall be effective only upon receipt. All notices, requests, or instructions given in accordance herewith shall be deemed received on the date of delivery, if hand delivered, on the date of receipt, if telecopied or sent electronically (via email or other methods), three (3) business days after the date of mailing, if mailed by registered or certified mail, return receipt requested, and one (1) business day after the date of sending, if sent by Federal Express or other recognized overnight courier. If any notice or due date falls on a Saturday, Sunday, or legal holiday, then such notice or due date shall be extended to the next succeeding business day.

(e)     In the event legal action is commenced to enforce or interpret any part of this Agreement, the prevailing Party shall be entitled to recover reasonable attorney's fees from the other Party.

(f)     This Agreement contains the entire agreement of Buyer and Seller relating to the rights granted and obligations assumed in this Agreement. For the avoidance of doubt, this Agreement supersedes any previous agreement between the Parties, whether written or oral, for the purchase and sale of the Property. Any oral representations or modifications concerning this Agreement shall not be effective unless contained in writing signed by the Party to be charged.

(g)     No waiver or failure to insist on strict compliance with the terms of this Agreement shall constitute a continuing waiver of any provision hereof unless such waiver shall be in writing and signed by the Party to be charged.

(h)     Buyer and Seller understand and agree that the separate counterparts of this Agreement may be separately executed by Buyer and Seller all with the same full force and effect as if the same counterpart had been executed simultaneously by both Buyer and Seller. Facsimile signatures shall be binding as originals.

8

    (i)  This Agreement shall not be binding upon either Party until signed by both Parties.

   9. <u>Default & Remedies.</u> Seller shall be deemed to be in default hereunder upon the occurrence of the following events: (i) any of Seller's warranties or representations set forth herein shall be untrue when made or at Closing; or (ii) Seller shall fail to meet, comply with, or perform any covenant, agreement, or obligation on its part required within the time limits and in the manner in this Agreement.

   In the event Seller shall be deemed to be in default hereunder Buyer may, at Buyer's sole option, do any one or more of the following: (i) terminate this Agreement by written notice delivered to Seller on or before the Closing; and/or (ii) enforce specific performance of this Agreement against Seller including Buyer's reasonable costs and attorneys fees in connection therewith; and/or (iii) exercise any other right or remedy Buyer may have at law or in equity by reason of such default including, but not limited to, the recovery of attorneys' fees incurred by Buyer in connection herewith.

   Upon the occurrence of any event deemed by Buyer to be a default by Seller hereunder, all payments previously made by Buyer to Seller, or the Escrow Agent hereunder (including the Earnest Money Deposit, together with interest thereon) shall be forthwith promptly returned to Buyer by the Escrow Agent upon receipt of written notice from Buyer that Seller has defaulted under this Agreement

   Buyer shall be deemed to be in default hereunder if Buyer shall fail to deliver, at the Closing, any of the items specified in Section 5 hereof for any reason other than a default by Seller hereunder or the failure of the Escrow Agent to deliver to and for the benefit of Buyer those documents and instruments contemplated by this Agreement and Buyer fails to cure such default or breach within ten (10) days following written notice thereof from Seller.

   In the event Buyer shall be deemed to be in default hereunder, Seller, as Seller's sole and exclusive remedy for such default, shall be entitled to terminate this Agreement, shall receive as its only consideration therefor the Earnest Money Deposit (and all interest earned thereon) and neither Buyer nor Seller shall have further obligations or liability hereunder except as specifically contemplated by this Agreement.

10.  <u>Escrow Agent</u>. Midtown Title, LLC (Escrow Agent) is entering into this Agreement for the sole purpose of agreeing to serve as Escrow Agent and Closing Agent hereunder. Escrow Agent agrees to deposit the Earnest Money Deposit in an interest-bearing account with all interest earned thereon to belong to the Party legally entitled to the Earnest Money Deposit principal. Escrow Agent shall not be liable to either of the Parties hereto for any action or omission in the performance of his duties hereunder except in the case of willful misconduct or gross negligence. Each of the Parties hereto agrees to hold harmless and indemnify Escrow Agent for any claims, costs, damage or expense,

9

including reasonable attorney's fees, incurred by Escrow Agent in connection with Escrow Agent's services hereunder. In the event of any dispute between the Parties with respect to the disposition of the Earnest Money Deposit held by Escrow Agent, Escrow Agent may hold the Earnest Money Deposit until such dispute has finally been resolved either by written agreement of the Parties or through final binding court proceedings. In addition, Escrow Agent shall have the right at any time to deposit the Earnest Money Deposit with a Court of competent jurisdiction to determine proper disposition of the Earnest Money Deposit.

[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK,
SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the day and year first above written.

SELLER:

Swords Group, LLC, a Tennessee LLC

BY: JERRY M SWORDS

ITS: PRESIDENT

BUYER:

Realwarden, LLC, a Texas LLC

BY: _____Hugh Hawkins Entrekin_____

ITS: Managing Member

ESCROW AGENT:

Midtown Title

_____

BY: _____

ITS: _____

**Address:** 1704 Charlotte Pike, Suite 105 Nashville, TN 37203

**Email:** chris@midtowntitletn.com

11

## EXHIBIT A

Insert Legal Description

## EXHIBIT B

Seller move out conditions

1.  Lights        Intentionally deleted

2.  ~~Dock Levelers~~, Service Doors
    and Roll Up Doors:        All truck doors, service doors, roll up doors ~~and dock levelers~~ shall be serviced and placed in good operating order.

    *JHS*

    HE

3.  Dock Seals/Dock Bumpers:        Free of tears and broken backboards repaired. All dock bumpers must be left in place and well secured.

4.  Structural Columns        ~~All structural steel columns in the warehouse and office shall be inspected for damage. Repairs of this nature should be pre-approved by Buyer prior to implementation~~.

5.  Warehouse Floor:        The floor will be swept clean with no protrusions left in the floor. After the removal of equipment that is anchored to the floor, Seller shall fill holes that were drilled for anchor bolts, or any other holes created or exposed by the equipment removal. Holes will be filled with epoxy or concrete matching floor color as close as possible. If bolts are not able to be removed then Seller will remove any protruding sections.

6.  Tenant-Installed
    Equipment and Wiring:        A licensed electrician will be used by Seller to disconnect power to all equipment within the building. All conduit and electrical wiring from the equipment to the circuit breaker panel (power shut off) will be removed. The existing circuit breaker panels will remain in the their current configuration.

7.  Walls:        Intentionally deleted

13

| 8. | Carpet and Tile | Intentionally deleted |
|---|---|---|

8.      Carpet and Tile            Intentionally deleted

9.      Roof:            Seller shall not damage the roof or its support structure during the move out process.

10.      Signs:            All exterior signs must be removed and holes patched. ~~and paint touched-up~~ as necessary. All window signs should likewise be removed.

11.      Heating and Air Conditioning System:            Heating/air conditioning systems should be placed in good working order, including the necessary replacement of any parts to return the unit to a well-maintained condition. ~~This includes warehouse heaters and exhaust fans.~~

12.      Electrical:            See Exhibit B #6

14.      Overall Cleanliness:            ~~Clean windows, sanitize bathroom(s), vacuum carpet, and~~ All floors to be swept clean and remove any and all debris from office and warehouse. ~~In particular dust/residue coating rafters in the warehouse shall be cleaned out.~~ Remove all pallets and debris from exterior of Premises. All trade fixtures, dumpsters, racking, trash, vending machines and other personal property to be removed.

14

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:16-bk-03837 |
| SWORDS GROUP, LLC, | ) | Chapter 11 |
| | ) | Judge Marian F. Harrison |
| Debtor. | ) | |

**[PROPOSED] ORDER GRANTING DEBTOR'S MOTION FOR ORDER
APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES
PURSUANT TO 11 U.S.C. § 363**

This matter came on for consideration on the *Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363* (the "Motion"). In the Motion, Debtor sought entry of an order approving the sale of certain real property located at 704 Briskin Lane, Lebanon, Tennessee 37087 (the "Property") to Realwarden, LLC, free and clear of liens, claims, and encumbrances pursuant to Section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

It appears to the Court that the terms and conditions of sale set forth in Exhibit 1 to the Motion are appropriate and reasonable. It further appears that notice of the Motion was properly given pursuant to the Federal Rules of Bankruptcy Procedure and this Court's local rules, and that no party has filed an objection to the relief sought in the Motion.

IT IS THEREFORE ORDERED that the Motion is granted, and that Debtor is authorized to sell, free and clear of all liens, the Property located at 704 Briskin Lane, Lebanon, Tennessee 37087, in accordance with the terms set forth in Exhibit 1 to the Motion and and the lien of Simmons Bank shall attach to the proceeds of the Sale.

IT IS FURTHER ORDERED that the Sale is entitled to the protections of Section 363(m) of the Bankruptcy Code.

IT IS FURTHER ORDERED that the Debtor is authorized and directed to use the proceeds from the sale of the Property to pay at closing (i) the lien of the Lender, Simmons Bank; (ii) any other claims that constitute liens on the Property, to include the tax claims of Wilson County, Tennessee; and (iii) allowed commissions to Joe McKnight of Chas. Hawkins Co., Inc., as Debtor's broker, and Bo Fulk and Jim Rodrigues of JLL, as brokers for Buyer.

IT IS SO ORDERED.

---

THIS ORDER WAS SIGNED AND ENTERED
ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE

---

APPROVED FOR ENTRY:


/s/ R. Alex Payne
Griffin S. Dunham
R. Alex Payne
DUNHAM HILDEBRAND, PLLC
2510 8th Avenue South, Suite 210
Nashville, Tennessee 37204
629.777.6529
alex@dhnashville.com
*Counsel for the Debtor*